# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ALONZO D. POUGHT,**

      **Petitioner,**

  v.                                    **Civil Action No. 5:14cv16**
                                              **(Judge Stamp)**

**R.A. PURDUE, Warden**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On February 6, 2014, the *pro se* petitioner, Alonzo D. Pought,(hereinafter Pought) an inmate at FCI Gilmer, filed a Habeas Corpus petition pursuant to 28 U.S.C. § 2241challenging the execution of his federal sentence in relation to a sentence imposed by the State of Michigan. On April 25, 2014, Pought paid the required five dollar filing fee. On April 29, 2014, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the respondent. On May 16, 2014, the respondent filed a Motion to Dismiss and Response to Order to Show Cause. On May 19, 2014, 2013, the court issued a Roseboro notice; and on July 10, 2014, Pought filed a reply to the respondent's Motion to Dismiss, and his own Motion for Summary Judgment. On September 12, 2014, the respondent was ordered to file a supplemental memorandum, which he filed on October 2, 2014. On October 27, 2014, the petitioner filed a reply.

### II. FACTS

1

On March 9, 2011, Pought was arrested in Saginaw, Michigan by a task force made up of nine state law enforcement agents and one agent with the Drug Enforcement Agency for drug charges and violation of his state parole. (Doc. 11-1, p.1). One day later, on March 10, 2011, Pought's Michigan State parole was revoked, and he was returned to the Michigan Department of Corrections ("MDOC") to serve the remainder of a 40-year sentence imposed by the Saginaw, Michigan 10th Circuit Court in Case No. 08-31163-FH, and an 8-year sentence imposed in Case No. 08-031243-FH. (Docs. 1-3, p.2; 1-10, p. 3).

On July 13, 2011, a federal grand jury in the Eastern District of Michigan returned a two count indictment against Pought, charging him with Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1) and Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 1-4, p. 2). Thereafter, federal authorities borrowed Pought from the state via Writs of Habeas Corpus Ad Prosequendum on several occasions, including for his initial appearance on August 9, 2011, a Pretrial Conference on November 1, 2011, a second Pretrial Conference on November 3, 2011, a Motion Hearing on February 22, 2012, a Final Pretrial Conference and Plea Hearing on March 22, 2012, and his Sentencing Hearing on September 27, 2012. (Doc. 11-4, pp. 2-5). Pought was sentenced on September 27, 2012, to a term of 188 months on the drug charges contained in Count 1, to be followed by six years of supervised release, and the firearm charge was dismissed on the motion of the United States. (Doc. 1-6, p.2). Pought's sentence of 188 months was to be served concurrently to his state court sentence. (Id. at 3).

Pought remained in state custody until he was released by the MDOC on parole to a federal detainer on December 5, 2012. To implement the order that his federal sentence be concurrent to his state sentence, a nunc pro tunc designation was made, and accordingly, his federal sentence was

commenced on September 27, 2012, the date it was imposed. (Doc. 11-1, p. 2). Pought's current projected release date, the date on which he will complete serving his federal sentence with consideration for good conduct time is May 20, 2026. (Doc. 11-2, p. 3).

### III. CONTENTIONS OF THE PARTIES

**A. Petitioner's Motion**

Petitioner makes the following claims in his habeas corpus petition:

1. the BOP violated his rights by erroneously refusing to grant him twenty-one months of credit toward his federal sentence;[1]

2. he was in federal custody for the entire period of time before his sentence was imposed, and therefore, that period of detention should have been credited against his federal sentence instead of his state sentence; and possibly

3. the federal judge inappropriately found him to be a career offender, which enhanced and lengthened his sentence.

**B. Respondent's Response**

Respondent makes the following claims in its response and motion to dismiss:

1. Petitioner is not entitled to prior custody credit;

2. Petitioner was always in state custody, until his state sentence was completed on December 5, 2012, and the time period between March 9, 2011 and September 27, 2012, were spent in service of his state sentence; and

3. a §2241 petition is not the appropriate forum to challenge the enhancement as a career offender, and thus, the claim should be dismissed.

**C. Petitioner's Reply**

Petitioner makes the following claims in his reply and motion for summary judgment:

---

[1]For purposes of clarification, the undersigned notes that Pought is seeking credit for the time period beginning with his state arrest on March 9, 2011, and ending the day before the commencement of his federal sentence of September 26, 2012, which is 568 days or approximately 19 months.

1. that Respondent's took primary jurisdiction of him;

2. his time served in state incarceration was not in service of his parole revocation, because Michigan postponed his parole revocation until the federal proceeding was completed;

3. Michigan never sentenced Petitioner to any incarceration, but simply reparoled him into his federal sentence; and

4. because there are disputed facts in this case, Respondent's motion to dismiss should be denied and Petitioner's motion for summary judgment should be granted because the facts clearly show that the Respondent's inappropriately denied him credit against his sentence to which he was entitled. (Id. at 9).

**D. Respondent's Supplemental Response**

In response to the undersigned's directive to clarify how the BOP Designation and Computation Center ("DSCC") concluded that the petitioner's Michigan State Parole was revoked on March 10, 2011, when the Parole Violation Formal hearing did not appear to be held until October 16, 2012, the respondent has supplied an explanation, including attachments. Specifically, the respondent cites Michigan parole regulations and notes the state law provides that "[p]ending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated.

**E. Petitioner's Reply**

Pought continues to argue that the time spent in detainment from March 9, 2011 through September 2012, did not apply to a state sentence and did not otherwise benefit him with respect to any sentence, State or Federal. Pought also cites Third Circuit law that a parolee who is confined awaiting parole revocation is not serving a term of imprisonment within the meaning of the Interstate Agreement on Detainer's Act. Accordingly, Pought moves this court for Summary Judgment and, in effect, seeks an Order directing the BOP to apply the period from March 9, 2011, through September 27, 2012, towards his federal sentence of 188 months.

### IV. STANDARD OF REVIEW

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *see also Martin,* 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Conley,* 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003) (citing *Dickson v. Microsoft*

*Corp.,* 309 F.3d 193, 213 (4th Cir.2002); *Iodice v. United States,* 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal,* where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison,* 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon,* 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987).

Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

### A. *Nunc Pro Tunc* Designation

A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). *See United States v. Evans*, 159 F.3d 908, 911 (4th Cir. 1998) ("A federal sentence does not commence until the Attorney General receives the defendant into [his] 'custody' ' for service of that sentence."). The earliest possible date that a sentence can commence is the date of imposition. *See U.S. v. McLean*, 867 F.2d 609 (4th Cir. 1989)(unpublished)("A federal sentence cannot commence prior to the date it is pronounced."). Accordingly, in this case, the petitioner's federal sentence commenced on September 27, 2012, the date it was imposed.

In some cases, such as the instant one, a federal prisoner's sentence may commence prior to the prisoner's arrival at a federal facility for service of his federal sentence. Title 18 U.S.C. § 3621(b) gives the BOP the authority to "designate the place of [a] prisoner's imprisonment." Therefore, where a federal court orders its sentence to run concurrent with a previously imposed state sentence, a *nunc pro tunc* designation can be made, whereby the BOP designates a state facility as the place for service of a federal sentence. See U.S. v. Evans, 159 F.3d 908, 9111-12 (4th Cir.

7

1998)(a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the BOP agrees to designate the state facility for service of that federal sentence.").

In Pought's case, there is no dispute that his federal sentencing order directed that he be committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: 188 months, to be served concurrently to state court sentence. (Doc. 11-3, p. 2). Accordingly, in order to run Pought's federal sentence concurrently with his state sentence, the BOP made a *nunc pro tunc* designation, and his sentence was deemed to have commenced on September 27, 2012, the date his federal sentence was imposed rather than on December 5, 2012, when he was released into federal custody pursuant to the detainer. Therefore, the sole issue before this Court is whether Pought is entitled to credit for time he spent in custody prior to September 27, 2012.

**B. Prior Custody Credit**

Although Pought's federal sentence did not commence until September 27, 2012, the date it was imposed, he argues that he is entitled to prior custody credit. 18 U.S.C. § 3585(b), states:

> defendant shall be given credit toward the service of a term of imprisonment for any time he spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Pought maintains that under that statutory provision, he is entitled to credit against his federal sentence from March 9, 2011, when he was arrested for drug charges and violation of his state parole, until September 27, 2012, when he was sentenced by the United District Court for the Eastern District of Michigan. In advancing this argument, Pought maintains that this period of time

8

was not applied to his state sentence and did not otherwise benefit him with respect to his state sentence.

The undersigned acknowledges that the sentence calculation in this case is confusing, and it is understandable that Pought believes he is entitled to prior custody credit towards his federal sentence. However, a careful review of the records from the Michigan Department of Corrections establishes that Pought is not entitled to any prior custody credit, and his sentence, as calculated by the BOP is correct.

Where, as here, a prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction applies. Primary jurisdiction is explained in United States v. Smith:

> In the context of successive criminal prosecutions by different sovereignties this
> "chief rule which preserves our two systems of courts from actual conflict of
> jurisdiction" means that the sovereignty which first arrests the individual acquires
> the right to prior exclusive jurisdiction over him,…and this plenary jurisdiction
> is not exhausted until there has been complete compliance with the terms of,
> and service of any sentence imposed by, the judgment of conviction entered against
> the individual by the courts of that first sovereignty…

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993)(quoting In re Liberatore, 574 F.2d 78 (2d Cir. 1978)).

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D.W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *citing* United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980)("Primary jurisdiction remains vested in the state which first

9

arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence.").

In reviewing the exhibits contained in this case, it is clear that on December 18, 2008, Pought was sentenced to two Michigan state sentences, a 1 year 11 month to 8 year sentence imposed in case number 08-031243-FH-4 for Controlled Substance Delivery/Manufacture of Marijuana and a 1 year 11 month to 40 year sentence imposed in case number 08-031163-FH-4 for Controlled Substance Delivery/Manufacture, Narcotics/Cocaine. Pought was paroled from his state sentences on June 2, 2009, and his parole term was to run from June 2, 2009, through June 2, 2011. On March 9, 2011, prior to completion of his parole term, he was arrested for new criminal conduct.

Pought was served with a Parole Violation Notice on March 11, 2011. The Recommendation section reflects that on March 11, 2011, Supervising Parole Agent Jennifer F. Howell recommended that Pought be returned for Parole Revocation Process.(Doc. 22-1, p.7). On March 21, 2011, Supervisor Bill J. Pigott recommended that Pought be returned to prison, because he was already detained.(Id.). That same day, Area manager Shannon N. Myers determined that Pought would be returned to prison based on his possession of a handgun and an assault rifle.(Id.). A procedural hearing was scheduled for April 19, 2011; however, Pought signed an adjournment request form on April 7, 2011. Accordingly, the hearing was postponed at Pought's request due to the possibility of criminal charges being filed. (Doc. 22-1, p. 8).

As previously noted, Pought was not indicted by the Federal Grand Jury until July 13, 2011, well after he violated his state parole and was re-incarcerated by the Michigan Department of Corrections. On September 27, 2012, the United States District Court for the Eastern District of Michigan sentenced Pought to 188 months incarceration, to be served concurrently with his state

sentence. On October 16, 2012, the Michigan Department of Corrections held a parole hearing as a result of the 188-month federal sentence that had been imposed. After determining that even if he was found in violation of weapon charges, his federal sentence was for more than 15 years, the Michigan Department of Corrections paroled him to his federal detainer so that he could begin serving that sentence. (Docs. 22-1, pp. 8-9 & 1-7, p.2).

Under Michigan law, the term "parole" is defined as a conditional release, not a completion of the original sentence. When an offender is arrested while on conditional release for violating rules or conditions of said release, including when additional criminal offense are committed, the arrest itself and the return of the offender to confinement terminates the conditional release, i.e., the parole. "A parole shall be construed as a permit to the prisoner to leave the prison, and not as a release." MI ST 791.237Sec. 38(6). Therefore, Pought's state parole was revoked immediately following his arrest on the new criminal charges. Accordingly, he was taken into state custody and was immediately incarcerated for service of the remainder of his original state sentences. Therefore, from March 9, 2011, through September 27, 2012, Pought was in the primary custody of state officials and was serving his two state sentences until he was re-paroled by the state to federal authorities following the imposition of his federal sentence.[2] Therefore, the period of time from the date he was arrested on March 9, 2011, through the day before his federal sentence was imposed was

---

[2]This conclusion is buttressed by the fact that following Pought's July 13, 2011, Federal indictment, U.S. Magistrate Judge Charles E. Binder entered an Order of Detention on August 10, 2011, finding that because Pretrial Services had advised the Court that Pought was already serving a state sentence, he was not eligible for bond in his Federal case. (Doc. 22-2, Entry 9). Furthermore, his docket sheet from the Eastern District of Michigan reflects that throughout his Federal case, Pought was transported from state study custody for appearances in his Federal case pursuant to writs of habeas corpus *ad prosequendum* and then returned to the state facility following each Federal court proceeding. (Doc. 22-2).

time spent in state custody. Consequently, this time period cannot be credited against his federal sentence as prior custody credit because it would amount to double credit in violation of 18 U.S.C. § 3585(b). See United States v. Wilson, 503 U.S. 329, 337 (1992)(§3585(b) precludes double credit).

Finally, the undersigned notes that in his original petition, Pought possibly made a claim that his federal sentence was improperly enhanced. Specifically, Pought noted that "his 188 mons. Concurrent sentence encompass his states violation sentences which were factors establishing his Career Offender guideline range under U.S.S.G. §4B1.1. The court determined Petitioner state sentences (i.e. Case No. 08-31163-FH' 40 yrs.' and Case No. 08-031243-FH '40-yrs.') as sentence predicates under the sentencing guidelines Career Offender sentencing him to 188 mons. To be served concurrent with the above parole state sentences." (Doc. 1-1, p. 6). In his subsequent reply to the respondent's Motion to Dismiss, Pought makes no mention of an improper sentence enhancement, nor does he raise the issue in his reply to the respondent's supplemental response. Accordingly, the undersigned has concluded that the quote cited above from Pought's habeas petition was intended to add credence to his claim for prior custody credit. However, to the extent that Pought was attempting to raise a claim that his state sentences were inappropriately used for predicate career offender purposes when calculating his sentencing guidelines, this is the type of claim that should be brought in a § 2255 petition because it involves the imposition rather that the execution of his sentence.³ To the extent that the petitioner is raising this claim in support of his §

---

³Title 28, United States Code, Sections 2241 and 2255 each create a mechanism by which a federal prisoner may challenge his detention. However, the two sections are not interchangeable. Section 2255 is the appropriate method for a federal prisoner to challenge his conviction or the imposition of his sentence. Adams v. United States, 372 F.3d 132, 134 (2nd Cir. 2004); see In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000). Conversely, Section 2241 is the

2241 petition, the same should be dismissed, as well.

## VI. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 10) be **GRANTED**, the petitioner's Motion for Summary Judgment (Doc. 18) be **DENIED**, and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);*Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 128 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to her last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

---

proper method for challenging the execution of a sentence. Adams at 135; see In re Jones, at 332-33. In a § 2241 petition, a prisoner may seek relief from the administration of his parole, computation of his sentence, disciplinary actions taken against him, or the type of detention and conditions in the facility where he is housed. Adams at 135.

DATED: November 14, 2014.

/s Robert W. Trumble
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE